**In re Nathaniel RILEY, Debtor.**

**Bankruptcy No. 95–72891.**

United States Bankruptcy Court,
D. South Carolina.

Sept. 15, 1995.

D. Randolph Whitt, Columbia, SC, for United Carolina Bank.

Robert Kenneth King, West Columbia, SC, for Debtor.

### ORDER

JOHN E. WAITES, Bankrtupcy Judge.

THIS MATTER comes before the Court upon a motion filed on June 19, 1995 by United Carolina Bank ("UCB") seeking relief from the automatic stay provisions of 11 U.S.C. §§ 362(a) and 1301(a).[1] The Debtor

---

**1.** Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.,* shall be by section number only.

filed a timely objection, appeared and testified at the hearing before the Court on July 31, 1995. Based upon the evidence, testimony and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

In this case, the parties have stipulated that a properly executed forbearance agreement had been entered into between the parties in May of 1993. Paragraph Nine (9) of the agreement states:

As further consideration to induce Mortgagee [UCB] to enter into this agreement, Mortgagor [Debtor] agrees that in the event a proceeding under Title 11, either voluntary or involuntary, is commenced by or against Mortgagor, Mortgagor will not oppose or object to Mortgagee's Motion for Relief from the Automatic Stay (11 U.S.C. § 362).

Testimony indicated that the Debtor made substantial payments to the Mortgagee subsequent to the execution of the forbearance agreement and the parties stipulated that the mortgage default was cured on or before August, 1994. Thereafter, the Debtor again defaulted on the mortgage. On March 17, 1995, the Creditor filed a Complaint for foreclosure of the mortgage. On June 2, 1995, the Debtor filed the current Chapter 13 Petition and proposed to pay the mortgage arrearage to UCB over the course of the Chapter 13 Plan. The Debtor's Petition for Relief was followed by the motion of UCB which is now before the Court.

## CONCLUSIONS OF LAW

■ The principal issue in this case is the validity and application of a "waiver of stay" provision in a forbearance agreement when the underlying mortgage default had been cured prior to the Petition in Bankruptcy. UCB maintains that the forbearance agreement is enforceable for the duration of the mortgage relationship between the parties, a period in excess of twenty five years, and without regard to the subsequent cure of the mortgage default.

This Court has previously visited this issue in the case of *In re Darrell Creek Associates*, 95–71263 (Bankr.D.S.C. 6/20/95) (JW). In *Darrell Creek Associates*, this Court in reliance upon a decision from the Bankruptcy Court for the District of Massachusetts stated:

In *Powers*, the Court found that pre-petition agreements containing waivers of stay are not automatic or self executing. *Powers*, at p. 483. A pre-petition agreement involving a waiver is a primary element in determining if cause exists for relief from the stay. Once the pre-petition waiver has been established, the burden is on opposing parties to demonstrate that it should not be enforced. *Powers*, at p. 484. In *Powers*, the Court examined such factors as the benefit the debtor received from the workout agreement, the loss of consideration or potential prejudice to the creditor if waiver is not enforced, the effect of enforcement on other creditors and whether there appears to be a likelihood of a successful reorganization.

*In re Darrell Creek Associates;* slip op. at 8 and 9 citing *In re Powers*, 170 B.R. 480 (Bankr.D.Mass.1994).

■■ Generally, forbearance agreements are enforceable when the parties have used the contract to afford a mortgagor the opportunity to avoid foreclosure. As indicated in *In re Cheeks*, 167 B.R. 817 (Bkrtcy.D.S.C. 1994), each party concedes certain rights in this context of such agreements and thereby furthers the public policy in favor of encouraging out of court settlements. However, such agreements must be strictly construed in light of the contractual language and the associated circumstances.

■ As stated in the *Darrell Creek Associates* and *Cheeks* decision, the first determination is whether the affected party understood the terms and consequences of the waiver of stay. Unlike the sophisticated parties involved in *Darrell Creek Associates*, the Debtor in this case is an elderly gentleman with seven years of education who testified that he had very little understanding of the forbearance agreement. The Debtor's daughter testified that she had attempted to interpret the document for her father and believed that the applicability of the forbearance

agreement would end with a cure of the default which existed when the agreement was entered.

Reviewing the agreement between the parties, it is apparent that its primary language and tenor is directed towards dealing with the default that was then existing. The preamble of the document addresses the Debtor's desire to bring the payments current and the dismissal of the pending foreclosure and the body of the agreement relates to the specific amount owed and sets forth the payments required to cure that then existing arrearage. Paragraph Six (6) indicates that the forbearance agreement shall not be considered as a novation of the mortgage and thereby implies that the forbearance agreement is a contract which is separate and independently enforceable from the mortgage. Additionally, in the forbearance agreement which appears to have been prepared by the creditor, there is no express language to indicate that the "waiver of stay" in paragraph Nine (9) is intended to address and survive the duration of the default then existing. Based on this analysis, the Court must conclude that the parties intended for the agreement to only apply to the default that existed in May of 1993, and not to a future default.

This case differs from *Cheeks* in that it can be inferred that the debtor in that case defaulted on the forbearance agreement within a very short interval after the document was executed and before the mortgage default was cured.[2] In this case, the Debtor made substantial payments to the benefit of UCB and ultimately cured the default which had been the stated objective and subject of the forbearance agreement.

A second distinction between *Cheeks* and this case is the fact that the Motion for Relief from the Stay in the *Cheeks* case was filed at a time when the debtor was in default of the forbearance agreement. Important to the Court within is the fact that the mortgage default addressed by the forbearance agreement had been cured. Thus, in view of the contractual provision which precludes a nova-

tion or modification of the mortgage, the subsequent default is properly governed by the provisions of the general mortgage document and not by the terms of the forbearance agreement.

In addition to matters of contractual construction, it is appropriate to consider the benefits achieved by the respective parties in determining the applicability of a forbearance provision. In the case at hand, the mortgagor received the benefit of avoiding foreclosure in May of 1993, and the mortgagee received the benefit of substantial payments which cured the mortgage default. The relative benefits are substantially balanced and are no longer executory. This contrasts with the benefits analysis in the *Cheeks* decision wherein the debtor had received the benefit of avoiding foreclosure, but the mortgagee had not received the income benefit for which it had bargained.

## CONCLUSION

Under the circumstances in this case, including the lack of express contractual provisions to show that the parties intended the forbearance agreement to continue beyond a cure of the default, the forbearance agreement entered into by the parties in May of 1993, is not effective as a waiver of the automatic stay for a subsequent default. For the reasons stated within, it is therefore,

**ORDERED,** that the Motion to Lift the Automatic Stay is denied.

**AND IT IS SO ORDERED.**

---

2. The Debtor in *Cheeks* entered into a forbearance agreement on July 29, 1993 and filed a Chapter 13 petition on January 14, 1994.