NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-466

JANEY CONSTRUCTION MANAGEMENT AND CONSULTING, INC.

vs.

RANDI LOUISE WHITMORE GUSCOTT[1] & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case arises from a dispute between a construction

company and a deceased homeowner's heirs and estate over a

written construction contract (contract) to rebuild the

decedent's home (project) after it was destroyed by a tragic

fire.  The plaintiff construction company, Janey Construction

Management and Consulting, Inc., commenced this action in

Superior Court seeking to enforce a mechanic's lien, and to

_____

[1] As an heir of Valerie Whitmore Guscott, also known as Valerie Faye Whitmore Guscott.

[2] Charlie Rose Whitmore Guscott and Kennet Bartley Whitmore Guscott, as heirs of Valerie Whitmore Guscott, and Wanda Whitmore, as the personal representative of the estate of Valerie Whitmore Guscott.

recover damages for breach of contract and quantum meruit.  The personal representative of the estate of Valerie Whitmore Guscott filed a counterclaim for breach of contract, negligence, violation of G. L. c. 142A (Massachusetts Home Improvement Act), violation of G. L. c. 93A (Massachusetts Consumer Protection Act), and sought a declaratory judgment regarding the parties' rights and obligations in connection with the project.[3]  A judge (motion judge) dismissed the plaintiff's claims for enforcement of a mechanic's lien and quantum meruit about eighteen months before trial.  Following a six-day trial, a jury found both parties breached the contract but awarded no damages.  The jury issued an advisory opinion that the plaintiff was liable for several G. L. c. 93A violations and recommended damages.  After a hearing, careful consideration of the trial evidence, and review of the parties' post-trial written submissions, the trial judge issued detailed findings that adopted the jury's advisory verdict in part and ordered damages for the defendants totaling $103,250.[4]

---

[3] The negligence claim was dismissed by agreement before it reached the jury.  The Massachusetts Home Improvement Act claim was merged with the G. L. c. 93A claim.

[4] The jury's advisory award included an additional $200,000 for the plaintiff charging a different interest rate from that provided in the contract, which the judge rejected.

On appeal, the plaintiff claims that the motion judge erred in dismissing the quantum meruit claim, the trial judge abused her discretion by allowing an expert witness to testify on certain issues, and the final damages awarded were excessive. We affirm.

Background.  In March 2017, a fire burned down Valerie Whitmore Guscott's home, killing her husband and father.  The plaintiff's principal, Greg Janey, had known Whitmore Guscott's deceased husband for over forty years as a mentor in the construction business.  In December 2017, Whitmore Guscott contracted with the plaintiff to rebuild her home.  The scheduled completion date for the project was March 30, 2018. Payment for the project was to be in a lump sum funded by fire insurance proceeds (policy).  The project faced substantial delays, which the plaintiff contends were due to a delay in receiving funds from insurance, and the defendants claim were due to poor project management.  Whitmore Guscott lived in a rental property for about a year until the temporary living expense allowance under the policy was exhausted.[5]  For over a year, beginning in May 2018, two months after the scheduled completion date, until a certificate of occupancy was issued for the project in June 2019, Whitmore Guscott and her children

_____

[5] Her three children attended college and resided with her when not at school.

lived at several hotels and stayed in relatives' homes. When the Whitmore Guscott family finally returned to their rebuilt home, they encountered a host of construction defects and property damage. Ultimately, the plaintiff did not complete all the repairs, and the defendants did not pay the full contract price.

Discussion. 1. The quantum meruit claim. Generally, "[a] plaintiff is not entitled to recovery on a theory of quantum meruit where there is a valid contract that defines the obligations of the parties." Boston Med. Ctr. Corp. v. Secretary of the Executive Office of Human Servs., 443 Mass. 447, 467 (2012). There are two exceptions to this rule: (1) where the parties dispute whether there was a valid contract and the claims are brought in the alternative, see Chang v. Winklevoss, 95 Mass. App. Ct. 202, 211 (2019); and (2) where the plaintiff claims to have conferred additional value not covered by the contract. See Sugarman & Sugarman, P.C. v. Shapiro, 102 Mass. App. Ct. 816, 819-820 (2023). Here, the plaintiff does not dispute that there was a valid, fully integrated construction contract between the parties for the project. Nor does the plaintiff claim that any additional value was conferred beyond the scope of the contract. Instead, relying solely on the Supreme Judicial Court's holding in G4S Tech. LLC v. Massachusetts Tech. Park Corp., 479 Mass. 721 (2018) (G4S) that

4

a contractor may maintain a contract and quantum meruit claim despite the contractor's failure to comply strictly with contractual requirements unrelated to the design and construction itself, the plaintiff asserts that the motion judge erred by dismissing its quantum meruit claim. We disagree.

In G4S, a builder claimed to have completed around $10 million in services that were uncompensated and uncovered by the contract, because the other party did not complete necessary preparation work before construction. G4S at 727. The Supreme Judicial Court held that the builder was barred from contractual recovery because of material breaches of the contract's payment terms, unrelated to the construction itself, but potentially could recover under equitable theories for the $10 million extra value provided. Id. at 723, 735. Thus, G4S is an example of, not an exception to, the general requirement that a plaintiff must identify services not covered by a valid contract to proceed with a quantum meruit claim. G4S did not alter the requirement that a plaintiff must identify value conferred beyond the contract to sustain a quantum meruit claim. Here, the plaintiff did not show at the motion to dismiss stage that the exception contained in G4S applies.

2. Admission of expert testimony. The plaintiff also argues that the trial judge abused her discretion by allowing the defendants' expert witness to testify to the cost of repair,

5

the causes of the construction delay, and the causes of water damage in the home.  We are not persuaded that any of the contested testimony was admitted erroneously.

The plaintiff does not challenge the qualifications of the defendants' expert, who was the architect of record for the project, and contends only that certain parts of the expert's testimony restated hearsay from a non-expert or were too speculative.  The expert's cost analysis was admissible because he testified to his own opinions, informed by his own observations from working as the architect on the project and by independently admissible cost calculations.  See Department of Youth Servs. v. A Juvenile, 398 Mass. 516, 531 (1986).  The trial judge permitted the testimony after confirming prior to trial that the expert had sufficient personal knowledge to testify to the cost analysis and reaffirmed her ruling after hearing his testimony at trial. The plaintiff's remaining challenges to testimony regarding the causes of the construction delay and water damage relate to the persuasiveness of the expert's opinions rather than their admissibility.  See Commonwealth v. Hinds, 487 Mass. 212, 224 (2021) (judge's role as gatekeeper is limited to assessing reliability of expert's methods, not persuasiveness of conclusion).  Because the expert was qualified and the trial judge appropriately limited direct examination based on his relevant experience, she did not abuse

6

discretion in admitting any of the expert's testimony.  See id. at 218.

3.  Damages.  Finally, the plaintiff challenges various aspects of the jury's advisory verdict on damages, including damages for delay, demanding payment for work not yet completed as a condition of returning to the job, defective performance, and failure to complete work.  However, the jury's findings are not before us on appeal, where we review the trial judge's findings.  See Exhibit Source, Inc. v. Wells Ave. Business Ctr., LLC., 94 Mass. App. Ct. 497, 500 (2018) (judge sets damages on G. L. c. 93A claims and is not required to follow jury's damages award on verdict slip).  "Our review of the damages award is highly deferential" and to overturn it, "'we would have to determine that it was clearly excessive in relation to what the plaintiff's evidence ha[d] demonstrated damages to be.'"  K & K Dev., Inc. v. Andrews, 103 Mass. App. Ct. 338, 351 (2023), citing Spinosa v. Tufts, 98 Mass. App. Ct. 1, 10 (2020).

Although the jury's findings may have informed the trial judge's award, the specific $30,000 sum that the plaintiff contests on appeal does not appear in the final award -- instead the judge found that the evidence showed that it would cost $90,000 to remediate defective work and an additional $17,500 to reimburse expenditures attributable to delays in "getting back into the house."  The defendants are entitled to recover the

7

cost of making a structure conform to the contract. See Ficara v. Belleau, 331 Mass. 80, 82 (1954).

The trial judge explicitly rejected the jury's advisory finding on when or whether the plaintiff demanded advance payments as a condition for returning to work. Moreover, the trial judge ultimately reduced the award from the jury's recommendation of $303,250 to $103,250 and supported her award with an independent review of the proven damages. The plaintiff also argues that the G. L. c. 93A award is analogous to breach of contract damages and thus the remediation costs should be offset by the amount remaining unpaid on the contract. See Ficara, supra at 82-83 (damages due to unfinished construction work limited to difference between amount plaintiff would have paid under initial contract and amount plaintiff paid second contractor to complete job). Because the G. L. c. 93A damages stem from injuries beyond the failure to complete construction and are not duplicative of contract damages (which were not awarded), a contract-based offset was not necessary to avoid a windfall to the defendants. See Kattar v. Demoulas, 433 Mass. 1, 13 (2000) (cause of action under G. L. c. 93A is not dependent on traditional contract law concepts and analogies between the two are inappropriate). Ultimately, we defer to the judge's award because it was plainly valid under G. L. c. 93A

8

and well supported by the record.  See Exhibit Source, Inc., 94 Mass. App. Ct. at 500.

4.  Attorney's fees.  The defendants have requested, and, under G. L. c. 93A, are entitled to appellate attorney's fees. The defendants are directed to submit an application for appellate attorney's fees and costs, with any appropriate supporting materials, to the clerk of this court within fourteen days of the date of the rescript, pursuant to Fabre v. Walton, 441 Mass. 9 (2004).  The plaintiff shall have ten days thereafter to respond.

Judgment affirmed.

By the Court (Desmond, Hershfang & Brennan, JJ.[6]),

Clerk

Entered:  April 27, 2026.

---

[6] The panelists are listed in order of seniority.

9