COLMAN M. HERMAN *vs.* ADMIT ONE TICKET AGENCY LLC.

Norfolk. May 4, 2009. - August 27, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Resale of Tickets. Consumer Protection Act,* Unfair act or practice, Standing. *Practice, Civil,* Consumer protection case, Standing.

In a District Court action brought against the defendant, a licensed ticket re-
seller, alleging that it offered to sell the plaintiff tickets at prices that were
unlawful under G. L. c. 140, § 185D, which imposes limitations on the
prices ticket resellers may charge, and thus violated G. L. c. 93A, § 9, the
judge erred in denying the defendant's motions for a directed verdict,
where the plaintiff, who indisputably did not purchase a ticket from the
defendant, lacked standing to bring such a claim. [615-620] BOTSFORD, J.,
concurring. COWIN, J., dissenting.

CIVIL ACTION commenced in the Quincy Division of the District
Court Department on February 21, 2006.

The case was heard by *Mark S. Coven,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Richard E. Quinby (Katherine C. Santos* with him) for the
plaintiff.

*Joel G. Beckman (Michael G. Paris* with him) for the defend-
ant.

*Daniel L. Goldberg, Charles L. Solomont,. Brandon L. Bige-
low, & Samuel R. Rowley,* for New England Patriots, L.P., &
another, amici curiae, submitted a brief.

*Ben Robbins, Martin J. Newhouse, & Jo Ann Shotwell Kap-
lan,* for New England Legal Foundation & another, amici curiae,
submitted a brief.

SPINA, J. The plaintiff, Colman M. Herman, sued the defend-
ant, Admit One Ticket Agency LLC (Admit One), a licensed
ticket reseller, alleging that it offered to sell him Red Sox tickets
at prices that allegedly were unlawful under G. L. c. 140, § 185D

(§ 185D), which imposes limitations on the prices ticket resellers may charge, and thus violated G. L. c. 93A, § 9 (c. 93A). At the close of Herman's case at a jury-waived trial, Admit One moved for a directed verdict on the ground that there was no ticket purchase, no injury, and no proof that Admit One prevented Herman from attending a game. That motion was denied. At the close of its case, Admit One renewed its motion for a directed verdict, which also was denied. The trial judge found that Admit One had violated § 185D and c. 93A, and awarded Herman $25 in damages.

Admit One appealed to the Appellate Division of the District Court. The Appellate Division reversed the judgment, reasoning that a violation of § 185D required a prospective buyer actually to purchase a ticket, which Herman had not done. Herman appealed, and we granted his application for direct appellate review. We affirm the judgment entered in favor of Admit One by the Appellate Division.[1]

1. *Facts.* We summarize the facts found by the judge, as well as facts he could have found based on undisputed evidence.

Admit One is licensed under G. L. c. 140, § 185A, to resell tickets to certain public events. Its office is located in Weymouth, and it resells tickets to, inter alia, Red Sox baseball games. Approximately ninety-one per cent of its sales are conducted through "eBay"[2]; four per cent through its Web site; four per cent over the telephone; and one per cent to walk-in customers. All of its sales involve noncash transactions.

Admit One obtains Red Sox tickets by purchasing blocks of season tickets before the season begins, and prices those tickets according to market demand throughout the season. It does not base its ticket prices on the costs of acquiring and selling a particular ticket. The price of a ticket varies depending on the opponent, whether the Red Sox are on a winning or losing streak, how many days away the game is, the weather, and the avail-

---

[1]We acknowledge the amicus briefs submitted by the New England Legal Foundation and Associated Industries of Massachusetts, and the New England Patriots, L.P., and NPS LLC.

[2]"[E]Bay operates a popular Internet Web site that allows private sellers to list goods they wish to sell, either through an auction or at a fixed price." *eBay Inc.* v. *Mercexchange, LLC*, 547 U.S. 388, 390 (2006).

ability of discounted airfare and accommodations. Under this business model, Admit One may command a price significantly higher than the face value of a ticket for highly sought-after tickets; for less desirable games, Admit One may sell the tickets for face value or below face value.

Because Admit One determines ticket prices according to demand, its acquisition and operational costs are not allocated evenly among tickets. For example, in 2005, Admit One's sales totaled approximately $1,780,000. Its overhead expenses were $911,000, while the cost of acquiring tickets was about $875,000.[3] Admit One recouped its total expenses by assessing larger service and membership fees for highly sought-after tickets, and charging smaller fees, if any, for less valuable tickets.[4,5]

In May, 2005, Herman went to the ticket office at Fenway Park seeking tickets for Red Sox home games against the New York Yankees or the Baltimore Orioles. Both series, however, were sold out. Prior to this, Herman had not attempted to purchase tickets for those games directly from the Red Sox. Single game tickets for the games against the New York Yankees were sold separately from other regular season games on a very limited basis.[6] No single game tickets for those games were available at the Fenway Park ticket office. As a result, a fan seeking tickets

---

[3]The owner and manager of Admit One received a salary of $275,977, which represented fifteen per cent of that year's total sales and Admit One's total profit.

[4]The price of a ticket purchased through Admit One includes a membership fee and a service charge, which can "add up to 85 per cent above the cost of the ticket." The primary benefit of the membership fee, which comprises fifteen per cent of the price at which Admit One offers to sell a ticket, is that it gives customers "access to a transaction [the customer] otherwise would not get anywhere else." Other membership benefits include "two free magnets," notices of monthly specials, newsletters, and two years' worth of Red Sox schedules before the seasons start. Persons visiting the Admit One office in Weymouth, however, may obtain one free schedule and magnets without purchasing a ticket.

The service charge includes fixed and variable office expenses, such as rent, utilities, salaries, hourly wages, cleaning expenses, security expenses, advertising, search engine fees, shipping and handling, credit card processing fees, and various eBay-related costs.

[5]It is immaterial to this opinion that Admit One's expenses, see note 4, *supra*, ticket acquisition costs and profit, see note 3, *supra*, exceed the amount it reported as its total sales for 2005.

[6]Fans interested in purchasing tickets from the Red Sox for games against

to a New York Yankees game would be assessed approximately $10 in transactional charges by the Red Sox, see note 6, *supra*, which would bring the price of a loge box ticket with a face value of $80 to at least $90.[7]

On May 22, 2005, Herman went to Admit One's office in Weymouth intending to purchase tickets in the loge box section for the Red Sox games against the New York Yankees and the Baltimore Orioles. Admit One offered to sell Herman tickets to the game against the New York Yankees for $500 per ticket. It also offered to sell Herman tickets to the game against the Baltimore Orioles for $165 each. When asked, Admit One told Herman that the tickets had a face value of approximately $85.[8]

Herman was willing to pay face value for the tickets[9] or "what

the New York Yankees had to enter a random online drawing, the winners of which would be entitled to purchase up to four tickets for a single game. Those tickets would be assessed a "convenience fee" of $3.50 and a "processing fee" of $7. Some tickets would be available for purchase over the telephone to fans without Internet access on a first-come, first-served basis on a specified day. Tickets purchased over the telephone would be assessed a $10 processing fee.

[7]There was no evidence presented at trial that tickets to games against the Baltimore Orioles could be purchased without incurring similar transactional fees.

[8]The difference between the price of a ticket for a game against the New York Yankees when compared with the price of a ticket for a game against the Baltimore Orioles illustrates the manner in which Admit One unevenly allocates its costs and expenses.

[9]The following exchange took place during Herman's cross-examination:

> *Q.*: "Were you willing to spend $80 for the tickets?"
>
> " . . .
>
> *A.*: "I had no particular price in mind."
>
> *Q.*: "Were you willing —"
>
> *A.*: "I'm sorry, $80.00, I would have paid the face value."

Admit One's counsel then tried to impeach Herman with his deposition testimony, wherein Herman had answered the same question by responding that he "had no number in mind." Herman read his deposition testimony into the record, but maintained that "some place else in the deposition I may have said face value. On reflection today, it seems if it was face value, it would be reasonable to pay." A careful review of Herman's deposition testimony indicates that he had testified that he was willing to pay face value for a ticket.

the law allowed," but otherwise did not have any idea of a dollar figure he was willing to spend on tickets.[10] He also had "no particular thought in mind how [he] would pay," but thought he may have brought cash with him that day to buy tickets. Ultimately, Herman decided not to purchase tickets to either game.

On two or three occasions during the series against the New York Yankees, and on one or two occasions during the series against the Baltimore Orioles, Herman unsuccessfully sought game day tickets from the ticket office at Fenway Park.[11]

Herman subsequently sent Admit One a demand letter pursuant to G. L. c. 93A, § 9 (3), alleging that the prices at which it offered to sell him tickets were "far above prices allowed by [§ 185D]." Admit One's counsel responded, denying Herman's allegations. This suit followed.

2. *Discussion.* Herman argues that Admit One violated c. 93A by offering to sell him a ticket with a face value of $80 for $500 in contravention of § 185D. Admit One denies that its offer to sell Herman a ticket at that price violated § 185D because Herman did not purchase a ticket, and contends that even if such an offer was considered an unfair act or practice, Herman failed to present evidence of injury and causation. For the reasons that follow, we conclude that a plaintiff alleging that a ticket reseller has offered a ticket for sale at a price higher than permitted by § 185D must purchase a ticket to have standing to assert a c. 93A claim.[12]

The purpose of c. 93A is "to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace" by "impos[ing] liability on persons seeking to profit from unfair practices." *Poznik* v. *Massachusetts Med. Professional Ins. Ass'n*, 417 Mass. 48, 53 (1994). A party alleging a violation of G. L. c. 93A, § 9 (1), must establish (1) that the defendant has committed a

---

[10]Herman explained that he did not have a particular price in mind because "[s]ometimes I go into the marketplace to buy things and I have no particular price in mind, I scope it out."

[11]Herman testified that "on game day, the Red Sox have a policy of putting tickets up for sale and that could include tickets that were held by the players that they didn't use, so they turned them in or whatever."

[12]Given our conclusion that Herman does not have standing, we do not address Admit One's other contentions.

violation of G. L. c. 93A, § 2; (2) injury; and (3) a causal connection between the injury suffered and the defendant's unfair or deceptive method, act, or practice.[13] See *Hershenow* v. *Enterprise Rent-A-Car Co. of Boston*, 445 Mass. 790, 797 (2006). General Laws c. 93A, § 2 (*a*), proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." The unfairness of an act or practice is determined from all the circumstances. See *Duclersaint* v. *Federal Nat'l Mtge. Ass'n*, 427 Mass. 809, 814 (1998); *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 626 (1978); *Commonwealth* v. *DeCotis*, 366 Mass. 234, 242 (1974). Because c. 93A "created new substantive rights by making conduct unlawful which was not unlawful under the common law or any prior statute," *Commonwealth* v. *DeCotis*, *supra* at 244 n.8; see *Heller* v. *Silverbranch Constr. Corp.*, *supra*, and cases cited; *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975), the lawfulness of an underlying act or practice may not be a defense to a c. 93A claim. See *Kattar* v. *Demoulas*, 433 Mass. 1, 13 (2000); *Schubach* v. *Household Fin. Corp.*, 375 Mass. 133, 137 (1978).

General Laws c. 140, § 185D, inserted by St. 1924, c. 497, § 2, entitled, "An Act to regulate the sale and resale of tickets to theatres and other places of public amusement as a matter affected with a public interest in order to prevent fraud, extortion and other abuses," presently[14] provides:

> "No licensee under [§ 185A] shall resell any ticket or other evidence of right of entry to any theatrical exhibition, public show or public amusement or exhibition of any description at a price in excess of two dollars in advance

---

[13]General Laws c. 93A, § 9 (1), provides, in pertinent part:

"Any person, other than a person entitled to bring action under [§ 11] of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by [§ 2] or any rule or regulation issued thereunder or any person whose rights are affected by another person violating the provisions of clause (9) of [§ 3] of [G. L. c. 176D] may bring an action in the superior court . . . for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper."

[14]The first paragraph has been amended through St. 1975, c. 213, and the second paragraph was inserted by St. 1980, c. 460.

of the price printed on the face of such ticket or other evidence of right of entry as the purchase price thereof; provided, however, that a price in excess of the above maximum shall not be deemed in violation of this section if the amount in excess of the above maximum is solely attributable to service charges. For the purpose of this section, service charges are defined as costs incurred by said licensee related solely to the procuring and selling of such ticket or other evidence of right of entry and not related to the general business operation of said licensee. Service charges include, but are not limited to, charges for messengers, postage, and long distance telephone calls, extensions of credit and costs attributable thereto.

"The imposition of a fee, on an annual or per order basis, for customers purchasing tickets other than by immediate payment therefor in cash, which includes a membership fee, office expenses and the cost of processing credit card orders, shall not be deemed a violation of this section."

The Legislature, motivated by a belief that "the business of reselling such tickets has assumed proportions which have become . . . a menace to the public welfare," *Opinion of the Justices*, 247 Mass. 589, 596 (1924), enacted this statute to suppress "fraud, extortion, exorbitant rates and like abuses" associated with ticket sales. *Id.*, quoting Senate order transmitted to the Justices on April 1, 1924.

Herman contends that Admit One violated § 185D by offering to sell him tickets each having a face value of $80 for $500 apiece, and thus engaged in an unfair act or practice. He argues that contrary to the Appellate Division's conclusion, a prospective buyer need not purchase a ticket offered for sale at an allegedly illegal price to establish a violation of c. 93A. Admit One, laying heavy emphasis on the word "resell" in § 185D, asserts that a prospective buyer must purchase a ticket to establish a violation of § 185D.

While we agree that a ticket must be resold to establish a violation of § 185D,[15] it does not necessarily follow that the sale of a ticket offered for sale at a price made unlawful by

---

[15]General Laws c. 140, § 185F, criminalizes violations of G. L. c. 140, § 185D (§ 185D). As a result, we construe § 185D narrowly. See *Com-*

§ 185D is a prerequisite to establishing a violation of c. 93A. See *Kattar* v. *Demoulas, supra* (unfair to foreclose mortgage in retribution for plaintiff's refusal to testify even if defendants had legal right to effect foreclosure); *Schubach* v. *Household Fin. Corp., supra* (defendant creditor's practice of filing collection actions in locations inconvenient to debtors to increase likelihood of default judgment, although permissible under venue provisions of G. L. c. 223, § 2, could still be deemed unfair). Admit One concedes that reselling tickets at prices inconsistent with § 185D constitutes an unfair act or practice. See 940 Code Mass. Regs. § 3.16(3) (1993). Given the purposes of § 185D and c. 93A, offering a ticket for sale at such a price is no less unfair. Requiring a prospective buyer to purchase an illegally priced ticket would effectively preclude those unable to pay an unlawful ticket price from seeking redress for a defendant's unfair conduct. Moreover, the title of St. 1924, c. 497, see *supra* at 616, suggests that the purpose of the statute is not to protect against dangers specific to the completion of a purchase, but to generally remedy abuses in the ticket resale market. See *Hemman* v. *Harvard Community Health Plan, Inc.*, 18 Mass. App. Ct. 70, 73 (1984), quoting *United States* v. *Palmer*, 16 U.S. (3 Wheat.) 610, 631 (1818) ("Although a title of an act cannot control the words of the act, it 'may furnish some aid in showing what was in the mind of the [L]egislature' "). Thus, where, as here, a c. 93A action is directly or indirectly based on a statute regulating the price of a particular product or service to be sold to a consumer, a plaintiff normally has standing to assert a c. 93A claim if he or she is ready, willing, and able to purchase the product or service at a price consistent with the relevant statute.[16]

In this case, however, the ability of a prospective purchaser

monwealth v. *Pagan*, 445 Mass. 161, 167 (2005). We express no view whether offering to sell a ticket at a price in excess of that allowed by § 185D constitutes a crime pursuant to G. L. c. 274, § 6, Third, which provides: "[W]hoever attempts to commit a crime by doing any act toward its commission, but fails in its perpetration, or is intercepted or prevented in its perpetration, shall, except as otherwise provided, be punished . . . by imprisonment in a jail or house of correction for not more than one year or by a fine of not more than three hundred dollars, if he attempts to commit a crime, except any larceny under [G. L. c. 266, § 30], punishable by imprisonment in the state prison for less than five years or by imprisonment in a jail or house of correction or by a fine."

[16]Our decision in *Roberts* v. *Enterprise Rent-A-Car Co. of Boston*, 445

to show that he or she is ready, willing, and able to purchase a ticket at a price consistent with § 185D is made difficult by the fact that the statute allows ticket resellers to impose certain fees in addition to the face value of a ticket. While the statute specifies the types of fees a ticket reseller may assess, it does not impose readily ascertainable restrictions on those fees, such as dollar or percentage limits. The statute permits ticket resellers to recoup "service charges." Service charges, which may not relate to the "general business operation" of a licensed ticket reseller, "include, but are not limited to, charges for messengers, postage, and long distance telephone calls, extensions of credit and costs attributable thereto." § 185D, first par. A ticket purchaser will seldom, if ever, know whether a ticket reseller has incurred these sorts of charges without conducting extensive discovery, and therefore will not be able to establish that he or she is ready, willing, and able to pay for a ticket at a price consistent with § 185D. It is especially difficult to determine the lawfulness of a ticket's resale price when a ticket reseller, such as Admit One, conducts only noncash transactions and therefore may also impose "a fee, on an annual or per order basis, . . . which includes a membership fee, office expenses and the cost of processing credit card orders." § 185D.

Given the complexity of determining the amount of fees a ticket reseller may legitimately charge, proof of standing, normally a threshold issue, see, e.g., *Krafchuk* v. *Planning Bd. of Ipswich*, 453 Mass. 517, 521 (2009); *Commonwealth* v. *Crouse*, 447 Mass. 558, 564 (2006); *Commonwealth* v. *Bryant*, 447 Mass. 494, 496 (2006); *Associated Subcontractors of Mass., Inc.* v. *University of Mass. Bldg. Auth.*, 442 Mass. 159, 163 (2004); *Massachusetts*

---

Mass. 811 (2006), is not to the contrary. In that case, the plaintiff claimed that the defendant had not prominently displayed statutorily required language designed to educate a customer contemplating the purchase of a collision damage waiver that it may be unnecessary to buy a collision damage wavier. *Id.* at 813-814. The purchase of a collision damage waiver was necessary before the plaintiff could possibly claim injury from the defendant's allegedly unfair act or practice. In contrast, where a c. 93A claim is based on the policy embodied in a statute regulating the price of a product or service, a consumer that is ready, willing, and able to purchase the product or service at a price consistent with the relevant statute but lacks funds to make that purchase at an allegedly unlawful price has been injured by the ticket reseller's unfair act or practice.

*Bay Transp. Auth.* v. *Auditor of the Commonwealth,* 430 Mass. 783, 792 (2000), requires essentially a prima facie case. The cost of litigation is dear, considerably greater than the cost of a ticket. In order to keep a proper perspective on the merits of the case, and in light of the variable nature of the fees a ticket reseller may impose pursuant to § 185D, we hold that to obtain standing, a plaintiff must purchase a ticket to maintain a c. 93A claim premised on a violation of the policy embodied in § 185D.[17] Herman indisputably did not purchase a ticket from Admit One, and therefore lacked standing.

3. *Conclusion.* We affirm the decision of the Appellate Division.

*So ordered.*

BOTSFORD, J. (concurring). I concur in the result.

COWIN, J. (dissenting). It appears to me that the court has conflated standing with what is necessary to prevail on the merits of the claim. "To have standing in any capacity, a litigant must show that the challenged action has caused the litigant injury." *Slama* v. *Attorney Gen.,* 384 Mass. 620, 624 (1981). That is, the plaintiff must demonstrate that the statute has caused him some "legally cognizable injury." *Animal Legal Defense Fund, Inc.* v. *Fisheries & Wildlife Bd.,* 416 Mass. 635, 638 (1993).

General Laws c. 140, § 185D, creates a right in the buyer to purchase a ticket from the ticket reseller at a legally defined price. The court admits that the plaintiff need not actually purchase a ticket to qualify. Here, the plaintiff alleges that he was ready, willing, and able to purchase a lawfully priced ticket, and was rebuffed because he refused to consent to an allegedly unlawful premium. I fail to see what more is required for the plaintiff to establish that he occupies a place within the zone of protection that the statute was adopted to enforce. *Id.*

In contrast, the court demands that, in order to obtain standing, the plaintiff must show in advance that he will win the case. "[P]roof of standing, normally a threshold issue . . .

---

[17]We leave for another day whether Admit One's assessment of membership and service charge fees, see note 4 and accompanying text, *supra,* conforms with § 185D, second par.

requires essentially a prima facie case." *Ante* at 619-620. The court justifies this departure from our normal standing rule because of the purported complexity of determining the amount of fees a ticket reseller may legitimately charge. *Id.*

To the extent that it matters, the complexities the court perceives do not appear to me as particularly complex. The statute recognizes that a reseller may incur additional costs in regard to a given transaction, such as delivery charges, or that it may provide additional services to the customer, such as financing the ticket purchase.[1] In such instances, the reseller may lawfully increase its charges to the customer accordingly. Without attempting to decide the issue in this dissent, it may well be that these considerations are in the nature of affirmative defenses that would have to be proved by the defendant. Even if that were not the case, they have no relevance to standing issues: rather, they relate to a determination regarding the lawful price of the ticket in various circumstances. Thus, while these factors may influence the outcome on the merits, they cannot logically be transferred to the standing inquiry, and I respectfully dissent.

---

[1] General Laws c. 140, § 185D, provides in relevant part: "[A] price in excess of the above maximum [two dollars in excess of the ticket price] shall not be deemed in violation of this section if the amount in excess . . . is solely attributable to service charges. . . . The imposition of a fee . . . for customers purchasing tickets other than by immediate payment therefor in cash . . . shall not be deemed a violation of this section."