NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

23-P-178                                          Appeals Court

LOUISE CONNOR & others[1]  vs.  MARRIOTT INTERNATIONAL, INC.,
& another.[2]

No. 23-P-178.

Norfolk.     November 8, 2023. – March 18, 2024.

Present:  Rubin, Massing, & Desmond, JJ.


Consumer Protection Act, Unfair or deceptive act.  Practice,
    Civil, Summary judgment, Consumer protection case.



    Civil action commenced in the Superior Court Department on
November 13, 2019.

    The case was heard by Paul D. Wilson, J., on a motion for
summary judgment.


    Olena Savytska for the plaintiffs.
    Sally A. Morris for the defendants.


    MASSING, J.  The plaintiffs made reservations at the

defendants' hotel for the express purpose of meeting with

_____

    [1] NY Kids Showroom, Inc., and Stephanie Fishman.

    [2] Giri Dedham, LLC, doing business as the Fairfield Inn
Dedham.

prospective clients for their business -- the sale of children's clothing to retailers -- as they had done in the past. When they arrived, the hotel informed them of a new, unwritten policy that prohibited doing business in the hotel. When the plaintiffs argued about the surprise imposition of the new policy, they were forced to leave. The plaintiffs claim that their removal from the hotel violated a provision of the so-called "innkeeper's statute," G. L. c. 140, § 12B, which they contend amounts to an unfair or deceptive trade practice under G. L. c. 93A, § 2, as a matter of law. A Superior Court judge entered summary judgment for the defendants. Although we reject the plaintiffs' claim that § 12B of the innkeeper's statute is a consumer protection statute, the violation of which automatically violates c. 93A, we vacate the allowance of summary judgment on their c. 93A claim. The defendants did not demonstrate that the plaintiffs had no reasonable expectation of proving that the hotel's conduct was unfair or deceptive.

Background. "We recite the material facts in the light most favorable to the plaintiff[s], the part[ies] who opposed the motion for summary judgment." Sarkisian v. Concept Restaurants, Inc., 471 Mass. 679, 680 (2015).

Plaintiffs Louise Connor and Stephanie Fishman and their businesses, plaintiff NY Kids Showroom, Inc., and nonparty Appaman, Inc., respectively, sell high-end children's clothing

and merchandise to retailers ranging from local boutiques to major department stores. For several years the plaintiffs took rooms at the defendant, Fairfield Inn Dedham,[3] to showcase their wares to retail customers in the Boston area. The location of the hotel was particularly attractive because of its proximity to trade shows held at a children's clothing market nearby.

For their stays, the plaintiffs requested specific suites at the hotel to give them ample space to meet with potential clients and display sample merchandise. To set up, the plaintiffs "had to wheel in large merchandise displays and bring in boxes of merchandise." They made appointments or met with walk-in visitors, from whom they took orders for items that would be produced and shipped months later. The plaintiffs did not accept payment or distribute merchandise directly from the hotel.

On the afternoon of September 14, 2019, Fishman drove to Dedham from New Jersey. She called ahead to the hotel to request a late check-in and discuss the handling of the large boxes of samples that had been shipped to the hotel in advance.

---

[3] At all relevant times, defendant Giri Dedham, LLC, operated and did business as the Fairfield Inn Dedham. The record is unclear as to the relationship between Giri Dedham, LLC, and defendant Marriott International, Inc. The general manager of the hotel testified at his deposition that Fairfield Inn is a "subsidiary" of Marriott and "[t]hey go off of Marriott's policy because they are Marriott."

The front desk employee not only confirmed the booking and the hotel's receipt of five large boxes of samples, but also welcomed Fishman as a repeat guest and remembered her preference for a larger suite.

Connor arrived before Fishman; the hotel manager, Matthew Cooke, checked her into her room. Soon thereafter, Cooke visited Connor's room to inform her she "couldn't do any business" there. Connor explained that she had visited the hotel for business many times before and had never sold merchandise out of the hotel room. Cooke said, "[F]ine," and left the room, but soon returned, after telephoning the hotel's general manager, and directed Connor to leave the premises because the hotel's policy had changed and she was on a "do not rent" list. Cooke told Connor that the plaintiffs "no longer fit the image of the hotel." The general manager, citing the safety risks of allowing unregistered visitors into the hotel to view the plaintiffs' products, instructed Cooke to call the police to remove Connor.

When Fishman arrived, Connor had already been speaking with the police for about fifteen minutes in the parking lot in an attempt to resolve the conflict. The plaintiffs repeatedly asked to see a written copy of the new no solicitation policy or the do not rent list, but Cooke refused, leading Fishman to suspect that they did not exist. An undated document labeled as

a do not rent list does exist in the summary judgment record and includes the plaintiffs' names, but the general manager of the hotel conceded at his deposition that the plaintiffs were not on the list when they arrived and were ejected only for violating the no solicitation policy. The confrontation lasted for hours and sparked rumors among the plaintiffs' potential customers.

The police briefly and reluctantly handcuffed Connor before she and Fishman agreed to leave the premises. The hotel refunded Connor for the cost of her room. As Fishman had not checked in, no refund was necessary. Although Fishman found a different hotel and managed to reschedule most of their scheduled appointments, the plaintiffs claimed damages based on the last-minute change of hotels, loss of business, and the reputational harm they suffered as they were confronted by uniformed officers in sight of potential customers.

Discussion. The plaintiffs argue that because the hotel removed them based on an undisclosed policy, the hotel violated G. L. c. 140, § 12B, of the innkeeper's statute, which they contend amounts to a per se violation of c. 93A. Setting the innkeeper's statute aside, the plaintiffs also argue that the hotel's acts amounted to "unfair or deceptive acts or practices in the conduct of any trade or commerce." G. L. c. 93A, § 2.

We review de novo the entry of summary judgment to determine "whether, viewing the evidence in the light most

favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). Summary judgment is proper if the moving party shows "that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." Scholz v. Delp, 473 Mass. 242, 249 (2015), cert. denied, 578 U.S. 1023 (2016), quoting Ravnikar v. Bogojavlensky, 438 Mass. 627, 629 (2003). "The moving party bears the burden of demonstrating the absence of a triable issue of fact on every relevant issue." Scholz, supra. The only issue in this appeal is whether the defendants have shown that the plaintiffs have no reasonable expectation of proving that the hotel's conduct was unfair or deceptive.[4]

1. Innkeeper's statute. The plaintiffs rely on a section of the innkeeper's statute that lists a number of permissible reasons for a hotel to remove guests:

> "An innkeeper may remove or cause to be removed from a hotel a guest or other person who: refuses or is unable to pay for accommodations or services; while on the premises of the hotel acts in an obviously intoxicated or disorderly manner, destroys or threatens to destroy hotel property, or causes or threatens to cause a disturbance; or violates a rule

---

[4] The plaintiffs' complaint alleged claims of intentional infliction of emotional distress, tortious interference with advantageous business relations, and violation of c. 93A. Summary judgment entered on all three counts. On appeal, the plaintiffs advance only their c. 93A claim.

of the hotel that is clearly and conspicuously posted at or near the front desk and on the inside of the entrance door of every guest room. If the guest has paid in advance, the innkeeper shall tender to the guest any unused portion of the advanced payment at the time of removal."

G. L. c. 140, § 12B. The plaintiffs argue that because the hotel's supposed no solicitation policy was not "clearly and conspicuously posted," they were removed in violation of § 12B. And they argue that a violation of § 12B is a per se violation of c. 93A by the vehicle of 940 Code Mass. Regs. § 3.16(3) (1993). The hotel counters that its prohibition against conducting business from hotel rooms did not have to be posted because it was merely a "policy" but not a "rule," and in any event, it properly removed the plaintiffs under § 12B for "caus[ing] a disturbance."

Under 940 Code Mass. Regs. § 3.16(3), the Attorney General defines an act or practice to violate G. L. c. 93A, § 2, if "[i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection." The regulation "by its terms imposes the substantive limitation that the law or regulation at issue must be intended to protect consumers." Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 174 (2013).

We are aware of no authority that identifies § 12B of the innkeeper's statute as a consumer protection statute, nor do we think that it qualifies as such.  To the contrary, § 12B provides protection for innkeepers, who are required under the licensing provisions of G. L. c. 140, §§ 2, 5, and 6, "to be provided at all times with suitable food for strangers and travellers and . . . suitable rooms with beds and bedding for the lodging of its guests."  Commissioner of Corps. & Taxation v. Chilton Club, 318 Mass. 285, 290 (1945).  See Tamerlane Realty Trust v. Board of Appeals of Provincetown, 23 Mass. App. Ct. 450, 454 (1987).  Under § 12B, by contrast, hotels have the right to remove guests who refuse to pay, are unruly, or violate posted rules.  Rather than provide protections for hotel guests, § 12B provides a safe harbor for innkeepers who properly act to eject customers.

Our reading of § 12B as an innkeeper protection statute is confirmed by its legislative history.  The provision was inserted, together with G. L. c. 140, §§ 12A, 12C, and 12D, by chapter 167 of the Acts and Resolves of 2000.  Section 12A defines "hotel," while sections 12C and 12D provide additional rights for innkeepers:  allowing them to refuse service to certain individuals and to limit the number of guests who may occupy a room, authorizing certain steps to ensure payment for rooms and reimbursement for damages to hotel property, and

providing a cause of action against guests who negligently or intentionally damage hotel property or cause injury to others on the premises. Tellingly, the bill in which these provisions were included was titled, "An act further establishing the rights of innkeepers." St. 2000, c. 167.

Accordingly, we hold that § 12B of the innkeeper's statute is not a consumer protection statute within the meaning of 940 Code Mass. Regs. § 3.16(3).[5] Therefore, even if the hotel did not comply with § 12B in removing the plaintiffs, its noncompliance would not amount to a per se violation of c. 93A. On the other hand, even if the hotel had properly removed the plaintiffs under the provisions of § 12B, its compliance would not automatically insulate it from liability under c. 93A. "Legality of underlying conduct is not necessarily a defense to a claim under c. 93A." Kattar v. Demoulas, 433 Mass. 1, 13 (2000). Whether an act or practice violates c. 93A is based on the totality of the circumstances. See Herman v. Admit One Ticket Agency LLC, 454 Mass. 611, 616 (2009); Kattar, supra at 13-14. Thus, whether the defendants' alleged unfair or deceptive act or conduct was authorized by § 12B is one factor

_____

[5] Even if § 12B were a consumer protection statute, a violation would not be a per se violation of c. 93A unless "the conduct leading to the violation is both unfair or deceptive and occurs in trade or commerce." Klairmont, 465 Mass. at 174.

that should be considered, but is not dispositive.  See <u>Herman</u>, <u>supra</u>; <u>Schubach</u> v. <u>Household Fin. Corp</u>., 375 Mass. 133, 137 (1978).[6]

We reject the defendants' suggestion that § 12B authorizes innkeepers to remove guests for violations of unwritten policies.  While innkeepers need not post all of their policies or rules, they may claim the protection of § 12B to remove guests only if the policy or rule violated is prominently posted.  Still, whether the hotel's removal of the plaintiffs in this case comported with § 12B cannot be resolved at the summary judgment stage.  Genuine disputes of fact apart from the plaintiffs' alleged policy violation exist about whether the plaintiffs were removed in compliance with § 12B, for example, for causing a disturbance.  Although their removal is not the sole basis for the plaintiffs' c. 93A claim, the hotel's compliance or noncompliance with § 12B should be considered, and given whatever weight the trier of fact may attach to it, in assessing the merits of the c. 93A claim.

---

[6] For example, if the defendants had posted their new no solicitation policy by the front desk and in every room, but failed to inform the plaintiffs about the policy in advance, knowing the purpose of the plaintiffs' upcoming stay, this conduct might still be considered unfair or deceptive in the circumstances of this case.

2.  Unfair or deceptive trade practices.  General Laws

c. 93A, § 2, makes unlawful "unfair or deceptive acts or

practices in the conduct of any trade or commerce."[7]  An act or

practice violates c. 93A if it is either unfair or deceptive, as

"[t]he proscription is disjunctive."  Lee v. Conagra Brands,

Inc., 958 F.3d 70, 76 (1st Cir. 2020).  See Massachusetts Farm

Bur. Fed'n, Inc. v. Blue Cross of Mass., Inc., 403 Mass. 722,

729 (1989) ("An act or practice may be 'unfair' within the

statutory meaning without being deceptive or fraudulent");

Cherick Distribs., Inc. v. Polar Corp., 41 Mass. App. Ct. 125,

128 (1996) ("deception is only one prong of the prohibited

conduct under G. L. c. 93A").[8]  "[W]hether a particular set of

acts, in their factual setting, is unfair or deceptive is a

question of fact.  But whether conduct found to be unfair or

deceptive rises to the level of a chapter 93A violation is a

_____

[7] The plaintiffs' complaint does not specify whether their
c. 93A claim is brought under § 9 or § 11.  Although they
alleged that they sent a demand letter, as required by § 9, we
note that the plaintiffs are two individuals and one corporation
and that their claim might be viewed as arising under § 11, as
their alleged injuries stem from losses incurred in their
conduct of trade or commerce, which led to a loss of money or
property.  See Giuffrida v. High Country Investor, Inc., 73
Mass. App. Ct. 225, 237 (2008).  In any event, the parties do
not raise this issue on appeal.

[8] Although not every unfair act or practice is deceptive,
almost all deceptive acts and practices are unfair.  See Nei v.
Burley, 388 Mass. 307, 312-313 (1983).

question of law" (quotations and citation omitted). <u>H1 Lincoln, Inc</u>. v. <u>South Washington St., LLC</u>, 489 Mass. 1, 13-14 (2022).

The plaintiffs argue that their ouster was both unfair and deceptive. Given the many disputed issues of material fact, we agree that summary judgment should not have entered. The materials in the summary judgment record, viewed in the light most favorable to the plaintiffs, are sufficient to permit a finder of fact to determine that the defendants' conduct violated c. 93A.

To assess whether an act or practice is "unfair," "[w]e focus on the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors." <u>Massachusetts Employers Ins. Exch</u>. v. <u>Propac-Mass, Inc</u>., 420 Mass. 39, 42 (1995). "We have stated that a practice or act will be unfair under G. L. c. 93A, § 2, if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people." <u>Heller Fin</u>. v. <u>Insurance Co. of N. Am</u>., 410 Mass. 400, 408 (1991).

The evidence, considered in the light most favorable to the plaintiffs, shows that they made arrangements to stay at the defendants' hotel, reserving suites and shipping merchandise to the hotel as they had done in the past without incident. The

hotel accepted the plaintiffs' reservations with full knowledge of their purpose and practices, even receiving the plaintiffs' advance shipment of five boxes of merchandise. The plaintiffs traveled to the hotel in reliance on the front desk clerk's affirmative representation that their business visit would be welcomed and accommodated. When the plaintiffs arrived, the hotel seemingly invented a rule to thwart the very reason for their stay. The hotel's managers could not offer a cogent explanation of their rule change or produce a copy of their no solicitation policy or do not rent list, but they nonetheless called the police to have the plaintiffs physically removed. The plaintiffs were forced to cancel or reschedule appointments, find alternative accommodations, make new arrangements for transportation of their merchandise, and suffer losses to their business prospects and reputations.

Two aspects of the hotel's conduct, if proven, stand out as unfair within the meaning of c. 93A. One is that the hotel allowed the plaintiffs to make travel plans, ship merchandise, and arrange to meet with clients, all the time knowing that the hotel would upend the plaintiffs' plans and disrupt their business as soon as they arrived. This sort of "stringing along" conduct has been held to be actionable under c. 93A. See, e.g., H1 Lincoln, Inc., 489 Mass. at 16, quoting Greenstein v. Flatley, 19 Mass. App. Ct. 351, 356 (1985) ("Stringing along

tactics involve the use of a protracted 'pattern of conduct . . . calculated to misrepresent the true situation' to the target business and thereby induce detrimental reliance on the target's part"). The other is that when the hotel sought to oust the plaintiffs, it purported to justify its actions based on what the trier of fact could find to be a policy that did not exist, obscuring whatever true motives the hotel may have had. See Exhibit Source, Inc. v. Wells Ave. Business Ctr., LLC, 94 Mass. App. Ct. 497, 501 (2018) (violation of c. 93A supported by evidence that defendant provided "manufactured" and pretextual reasons for its actions).

The defendants argue that their conduct was justified because the plaintiffs' customers, coming in and out of the hotel, might pose a security threat; that their failure to disclose their supposed no solicitation policy to the plaintiffs in advance was no different from failing to notify arriving guests that a particular amenity might not be available; and that their conduct was at worst imperfect customer service, falling below the level of a c. 93A violation. We are not persuaded that these reasons entitle the defendants to judgment as a matter of law. Knowing the business purpose of the plaintiffs' stay, the hotel's failure to tell them in advance that they could not do business there was unlike neglecting to warn that an elliptical machine in the hotel gym was out of

order, and more akin to neglecting to tell arriving guests that rooms are not furnished with beds. While the defendants will have an opportunity to explain their conduct to the trier of fact, the plaintiffs are entitled to an opportunity to persuade the fact finder that this sequence of events, as described by the plaintiffs, was unfair and caused substantial injury to their business.

The defendants' conduct could also be found to be deceptive within the meaning of c. 93A. "An act or practice will be found deceptive 'if, first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material.'" Commonwealth v. AmCan Enters., Inc., 47 Mass. App. Ct. 330, 334 (1999), quoting Cliffdale Assocs., Inc., 103 F.T.C. 110, 165 (1984). A deceptive practice is one that "could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762, 777 (1980), quoting Lowell Gas Co. v. Attorney Gen., 377 Mass. 37, 51 (1979).

Viewing the summary judgment record in the light most favorable to the plaintiffs, the hotel knew the purpose of their reservations and affirmatively represented that the plaintiffs were welcome to stay there and do business as they had done in

the past.  The hotel argues that its failure to inform the plaintiffs of the change in policy was not a material omission because the ability to display items for sale is not a "central feature" of the services offered by a hotel.  See Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 72 (1st Cir. 2020), quoting Hall v. SeaWorld Entertainment, Inc., 747 F. App'x 449, 453 (9th Cir. 2018) ("SeaWorld's failure to disclose facts about the poor treatment of its orca whales was not an unfair or deceptive act because such treatment '[did] not concern a central feature of the entertainment experience' inherent to the purchase of SeaWorld tickets").  Here, however, the ability to display items for sale was the central purpose of the plaintiffs' visit -- and the plaintiffs provided competent evidence at the summary judgment stage to show that the hotel both knew this and accepted the plaintiffs' reservations, as well as their shipments of merchandise, with that specific understanding.  The hotel's misrepresentation of assent to the plaintiffs' business trip could be found to be an affirmative act that misled the plaintiffs into making a reservation and traveling to the defendants' hotel, rather than someplace else, which they would not otherwise have done.  See Purity Supreme, Inc., 380 Mass. at 777.  At the very least, the plaintiffs have presented a triable issue of fact whether the hotel's use of an arguably fictitious

policy and do not rent list was a deceptive means of forcing them out of the hotel.[9]

Conclusion.  We vacate so much of the judgment as grants summary judgment in favor of the defendants on the plaintiffs' c. 93A claim, and remand the case for further proceedings consistent with this opinion.  The judgment is affirmed in all other respects.

So ordered.

---

[9] The parties' requests for attorney's fees are denied.  If, after remand, judgment is granted in favor of the plaintiffs on their c. 93A claim, the plaintiffs shall be awarded reasonable attorney's fees under that statute.  See G. L. c. 93A, §§ 9 (4), 11.  Attorney's fees attributable to this appeal and any proceedings after remand may be included in the award.  See Patry v. Liberty Mobilehome Sales, Inc., 394 Mass. 270, 272 (1985).